**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------

MARTESE SLATER,

         Petitioner,

  v.                 No. 06-CV-611
                      (LEK/DRH)
GARY GREENE, Superintendent,

         Respondent.
-----------------------------------------------------------------

**APPEARANCES:**       **OF COUNSEL:**

MARTESE SLATER
Petitioner Pro Se
No. 02-A-4482
Great Meadow Correctional Facility
Post Office Box 51
Comstock, New York 12821

HON. ANDREW M. CUOMO    ALYSON J. GILL, ESQ
Attorney General for the State    Assistant Attorney General
 of New York
Attorney for Respondent
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Petitioner pro se Martese Slater ("Slater") is currently an inmate in the custody of the

New York State Department of Correctional Services ("DOCS") at Great Meadow Correctional

Facility. Slater was found guilty on August 8, 2002 of robbery in the first degree and robbery

in the second degree after a jury trial in Albany County Court and is presently serving a total

---

   [1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

determinate term of twenty-four years imprisonment.[2] Slater now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that he was denied the effective assistance of trial and appellate counsel. For the reasons which follow, it is recommended that the petition be denied.

## I. Background

On July 12, 2001, Slater and Luther Harris ("Harris") went to the home of Kadesha Miller ("Miller"), and her sister, Myava Murphy ("Murphy"), in Albany, New York. T. 56-57.[3] Slater told Miller that he and Harris were going to rob the Corner Store, a neighborhood business, and that he had a gun. T. 57-58. Miller and Murphy agreed to help Slater and Harris rob the store by distracting the store clerks and acting as lookouts. T. 57, 59, 86. The group walked to a parking lot across the street from the Corner Store where, Slater fired his gun to make sure that it functioned properly. T. 58.

Murphy entered the store and Miller entered shortly thereafter. T. 59, 86. Murphy purchased cigarettes and candy with her New York State welfare card. T. 86-87. After they left the store, they indicated to Slater and Harris that everything was clear. T. 60-61. Murphy and Miller re-entered the store and asked one of the clerks for help locating an item in the back of the store. T. 61-62, 89. Then, Slater and Harris entered the store. T. 48, 62. Slater carried a gun and went to the store clerk, Ali Elmnteser ("Elmnteser"), demanded money, choked him, hit him, and fired a shot at the wall. T. 62-64, 90. Harris pushed Homwed Zed, an employee,

---

[2] Slatter was sentenced as a second felony offender.

[3] "T." followed by a number refers to the pages of the trial transcript included with respondent's answer. Docket No. 8.

onto the ground and made him face the floor.  T. 48, 64, 90-91.  Slater took the money from a cigar box behind the cash register and all four fled the scene and divided the cash.  T. 63, 65, 91.

Meanwhile, Police Officer Brian Greagan heard a gunshot come from the area of the parking lot.  T. 111.  Soon after, he heard a radio call for a robbery at The Corner Store.  T. 112.  He responded to the store with other officers.  There, he saw the two victims and noticed that Elmnteser had a laceration to his head.  EMS technicians were summoned, and Elmnteser was taken to the hospital.  T. 112-13.  Officer Greagan obtained a description of the suspects from the store's security video.  T. 120-21.

Detectives Thomas McGraw and Kenneth Kennedy were assigned to the case on November 20, 2001.  T. 124.  Detective McGraw went to The Corner Store and was informed by an employee that one of the females involved in the robbery had used her welfare benefit card to purchase items in the store just prior to the robbery.  T. 125.  Detective McGraw contacted the Department of Social Services and learned that the welfare benefit card belonged to Murphy.  T. 125.  The detectives interviewed Murphy and Miller and both admitted their participation in the crime and implicated Slater and Harris.  T. 126-28, 148-50.  The detectives then arrested Slater, who confessed to the robbery and provided a written statement.  T. 129-31, 150-58.

Slater was arrested, indicted, convicted, and sentenced as indicated above.  ST. 36.[4]  On December 9, 2004, the Appellate Division unanimously affirmed the conviction and sentence.  People v. Slater, 786 N.Y.S.2d 602 (3d Dep't 2004).  Application for leave to appeal

---

[4] "ST." followed by a number refers to the pages of the transcript of Slater's sentencing included with respondent's answer.  Docket No. 8, Ex. J.

to the New York Court of Appeals was denied on February 18, 2005. People v. Slater, 828 N.E.2d 94 (N.Y. 2005). Slater also filed a motion to vacate his sentence, which was denied on April 30, 2004. See Docket No. 8, Ex. H. This action followed.

## II. Discussion

### A. Ineffective Assistance of Trial Counsel

Slater contends that his trial counsel erred when he failed to (1) seek a missing witness instruction for the prosecution's failure to call Elmnteser, (2) raise the claim that the court's charge regarding the elements of first-degree robbery was insufficient, (3) raise the claim that the court's marshaling of the evidence was unbalanced, (4) raise the issue that the court's circumstantial evidence charge was improper, and (5) object to the prosecutor's summation. See Docket No. 1 at 7.

Slater contends that his trial counsel was ineffective for failing properly to bring to the court's attention his request for a missing witness charge for Elmnteser, who was not called as a witness. See Docket No. 1. This claim is without merit because Elmnteser was not available to testify. Under New York law, a missing witness instruction allows a jury to draw an adverse inference from a witness not testifying when that witness would normally be expected to support that party's version of events. People v. Savinon, 791 N.E.2d 401, 403 (N.Y. 2003). In order for a missing witness instruction to be given, three conditions must be met. The witness's knowledge must be material to the trial, the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought, and the witness must be available. Id. at 404. Here, counsel was not ineffective for failing to request

the missing witness instruction early in the trial[5] because the witness was not available. The prosecutor advised the trial court that Elmnteser had left the United States and that contact with the Immigration and Naturalization Service had been unavailing. T. 188-89. Moreover, as noted, Slater's counsel made a request for this charge at the close of the evidence. T. 188. As such, the ineffective assistance of trial counsel must fail as to this contention.

Slater contends that his trial counsel was also ineffective because he failed to object to the court's charge regarding the elements of first-degree robbery. See Docket No. 1. First, the court informed the jury that it was alleged that Slater stole money and other property from Elmnteser by means of physical force and that Slater displayed what appeared to be a pistol. T. 247-48 Next, the court read the elements of robbery in the first degree to the jury. T. 248. Finally, the court instructed the jury that the prosecution were required to prove two elements. First, Slater forcibly stole money from Elmnteser and, second, in the course of the commission of the crime, Slater or another participant, displayed what appeared to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. T. 249. These instructions informed the jury of the elements of robbery in the first degree. Accordingly, Slater's trial counsel was not ineffective in failing to object to these proper instructions.

Slater further contends that his trial counsel was ineffective in failing to object to the court's marshaling of the evidence. See Docket No. 1. During the charge, the court read the indictment to the jury, recalled for the jury the names of the witnesses, but did not review the evidence in the case. T. 245, 247-48, 250. Counsel had no basis on which to object to the court's marshaling of the evidence because the court did not marshal evidence at all.

---

[5]Slater's counsel did make such a request during the charge conference. T. 188.

Slater next claims that his trial counsel was ineffective when he failed to object to the court's circumstantial evidence charge. See Docket No. 1. Courts are not required to give a circumstantial evidence charge in cases that involve direct evidence. See People v. Roldan, 666 N.E.2d 553 (N.Y. 1996). The case here involved direct evidence and, therefore, Slater was not entitled to the charge at all. Moreover, the judge informed the jury that circumstantial evidence was "proof of facts and circumstances by witnesses who testified to things seen or heard from which inferences may be drawn as to the ultimate fact or facts in issue." T. 244. The court then informed the jury that the circumstances themselves "which form the basis for an inference must first be established by proof to your satisfaction beyond a reasonable doubt and not left to rest upon conjecture or speculation," and "the inference of guilt should flow naturally from the facts proven and be [consistent] with them all." T. 244-245. The court's charge was sufficient to convey the correct legal principles. For these reasons, Slater's trial counsel was not ineffective when he failed to object to the court's circumstantial evidence charge.

Finally, Slater claims that his trial counsel was ineffective for not challenging the prosecutor's summation. See Docket No. 1. However, Slater does not state in his petition which comment made by the prosecutor was improper. Id. In fact, Slater only states that his trial counsel should have objected to the prosecutor's summation in order to preserve an issue for appeal. As such, there was no reason for Slater's trial counsel to object to the prosecutor's summation, and he was not ineffective when he failed to do so.

Additionally, a defendant arguing ineffective assistance of counsel must show that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. Counsel's performance must have been deficient and that deficient performance must have prejudiced

-6-

the defense. Once this is shown, it cannot be said that the result of the proceeding is reliable. United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). A defendant must demonstrate that counsel's errors were so serious that the defendant was deprived of a fair trial and that there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. Strickland, 466 U.S. at 686.

The proper measure of attorney performance is an objective standard of reasonableness in the totality of the circumstances under prevailing professional norms. Id. at 688; Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000). Strategic choices made after investigation of the relevant law and facts are normally not subject to challenge and the reviewing court must be "highly deferential" to counsel's performance. Strickland, 466 U.S. at 688. Additionally, state court findings on such matters are conclusive on the court reviewing the habeas petition if supported in the record. 28 U.S.C. § 2254(d); Summer v. Mata, 455 U.S. 591, 592 (1982).

Here, a review of the record indicates that Slater's trial counsel properly represented him in all respects. Counsel made the proper objections, filed the proper motions, and vigorously cross-examined the prosecution's witnesses. Further, Slater fails to demonstrate that he was prejudiced by any of the alleged ineffective assistance or that the result of the trial could not be relied upon. Therefore, the petition on this ground should be denied.

### B. Ineffective Assistance of Appellate Counsel

Slater contends that his appellate counsel erred when he failed to raise on appeal the ineffective assistance of trial counsel. See Docket No. 1 at 8.

The Strickland test was formulated in the context of evaluating the effectiveness of trial counsel. However, the same standard applies to claims regarding the performance of appellate counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Thus, a habeas petitioner must show that his or her attorney's performance fell below an objective standard of reasonableness and that there is a reasonable probability that but for counsel's error, the outcome would have been different. Id. Here, as discussed above, there was no ineffective assistance of trial counsel. Therefore, Slater's assertion that his appellate counsel was ineffective because appellate counsel failed to assert this claim on appeal is without merit.

The petition on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: November 6, 2007
        Albany, New York

*David R. Homer*
United States Magistrate Judge